Bland, Chancellor.
Ordered, that the matter of the aforegoing petition stand for hearing on the thirteenth day of September next; and each party is authorized to take testimony, before any justice of the peace, to be read at the hearing, on giving to the opposite party three days notice as usual. Provided that a copy of this order, together with a copy of the said petition, be served on the complainant on or before the fifth day of September next.
Under this order testimony was taken and returned; sundry documents were filed in relation to the matter of the petition; and the case was thus brought before the court.
10th October, 1828. — Bland, Chancellor. — The matter of the petition of the defendant Mullikin standing ready for hearing, and the solicitors of the parties having been fully heard, the proceedings were read and considered.
It appears, that the defendant Thomas Harwood was indebted to the State, and also to several individuals; for the payment of which debts, the late Benjamin Harwood and the defendant Mulli-Idn, had become bound, by bond or by promissory notes, as his sureties; and that, for the purpose of saving harmless these his sureties, he executed a deed, on the 7th of April 1810, by which he conveyed certain real and personal property to them, and the survivor of them, in trust for the payment of those specified debts for which they or either, of them were bound as his surety : and, in case either of those debts were not paid, within five years from that day, with power to sell the whole, or so much thereof as might be necessary to satisfy them. After the execution of this deed of trust, this Thomas Harwood being indebed to the plaintiff Hodges, *505 lie, Harwood, on the 11th of September 1810, by a deed legally executed, mortgaged the same property to Hodges for the debt due to him. But as this mortgage recites the deed of trust, Hodges could only take subject to the prior lien created by that deed.
On this state of things, Hodges filed his bill, on the 15th of June 1822, against Thomas Harwood, and Benjamin Mullihin, as the surviving trustee, to have the property sold for the satisfaction of the' debt for which it had been mortgaged; by his bill, he makes an exhibit of the deed of trust as well as the mortgage, and states, that Benjamin Harwood was dead; in consequence of which the trust had survived to the defendant Mullikin. This suit, thus instituted, was marked on the docket for the use of Wilson £f Sons. Harwood, in his answer, filed on the 12lh of December 1822, states, that the debts specified in the deed of trust were still- unpaid, and insists that a decree in favour of Hodges cannot be passed; on the ground, that those creditors have a prior lien, and should be made parties. But Mulli/cin, in his answer, filed on the 14th of July 1823, merely says, that he has sustained no injury; has no claim to the property mentioned in the deed of trust; and submits to such decree as may be deemed just. To these answers a general replication having been filed, a commission was issued, which having been returned without collecting any proofs, the case was submitted on the notes of the solicitor for the plaintiff, and on the notes of the solicitor for the defendant Harwood. Upon which, on the 2d of May 1825, a decree was passed, that unless the defendant Harwood paid the mortgage debt and costs on or before the 2d of June, then next, the property should be sold. It does not appear, that the mortgage debt has been paid, or that any sale has been made under the decree.
On the 25th of August last the defendant Mullikin filed his petition, on oath, in which he sets forth particularly the course he had pursued, and how far he was uninformed; and concludes by averring, in general terms, that he acted throughout in ignorance of his legal rights and duties; in ignorance of the facts; and was misled and deceived by. his co-defendant Harwood; by the gross neglect of the specified creditors to notify him of their claims ; and by the omission of the plaintiff’s solicitor, Midiólas Brewer, to inform him of the answer of the defendant Harwood, and the matters therein stated. Upon which the petitioner asked *506 leave to file a bill of review, or to have granted to him such other relief as the nature of the case might require.
It has been urged, that the petition, having been sworn to, is of itself sufficient ground for granting leave to file a bill of review; that it was entirely unnecessary to have taken any testimony in support of the allegations of the petition; and therefore, that it would be needless to decide upon the objections made to the competency of the witnesses who have been examined.
I have met with no instance in the English books, in which it appears, that any testimony had been taken and read at the hearing of an application for leave'" to file a bill of review grounded on an alleged discovery of new matter unknown before the decree. It is clear, that the party himself, as well as his solicitor, if the solicitor be alive, and there is any reason, from the circumstances of the case, to believe that he might have known of the alleged new matter, must each of them make a particular, full, and distinct affidavit, that he did not, before the decree, know of that which is stated as the newly discovered matter.(a) But, it is said to be necessary to state in such bill of review, that leave was obtained to file it, and the fact of the discovery; though it may be -doubted, whether after leave given to file the bill, that fact is traversable; or whether, if it should not be admitted it must be proved at the hearing of the bill of review.(b) Hence it would seem, that the grounds upon which the leave is granted should, at one stage or other, be allowed to be traversed, and be required to be sustained by proof. If so, then it is obviously best for all concerned, that every doubt, as to the grounds upon which the leave rests, should be finally and conclusively settled before the bill is filed; for otherwise there would not be that security against the vexatious renewal of a suit which ought to exist, as contemplated by the rule. which has been so long and so often approved; and besides, if it were otherwise, on the hearing of such a bill of review, the question, as to the propriety of the leave, would always be made or renewed as a preliminary point at that advanced stage of the proceeding.
In England this matter may be attended with some difficulty; as, I believe, the cheap and expeditious method of having testimony taken before a justice of the peace, respecting any interlocutory matter requiring an early decision, which has been so long and *507 well -established as a practice in Maryland,(c) is unknown to the chancery practice of England. On an application for leave to file a bill of review on the ground of newly discovered matter, I consider it most correct and conformable to the course of this court, in similar cases, that the propriety of granting' the leave should be at once fully investigated; that proofs should be admitted to be introduced in relation to it; and that the question should be then finally determined; since the evidence, should any be wanted by either party, may be so fully and so readily collected by authorizing the parties to take testimony before a justice of the peace? to be read at the hearing of the application. But if no proof should be asked for, then the application may be determined upon the petition only as sworn to by the party applying. I am therefore of opinion, that according to the principles and practice in chaneery of this State, the testimony in this case has been properly taken; and therefore must now be attended to so far as it can be considered as coming from competent witnesses.
It is objected that the defendant Thomas Harvsood is an incompetent witness upon this occasion, because he is interested in having this decree thrown entirely open by a bill of review. In all cases, where there are two or more defendants, the court may, if the liabilities of the defendants are distinct, or are susceptible of being separated, pass a decree affecting each differently, or in favour of one and against another of them. But if the case is so blended and entire as to impose none other than a joint liability upon all, so that the responsibility of no one can be separated from the rest, then there must be a decree against all or none; And if any one defendant,' in such an entire case, makes out a good defence, the bill must be dismissed as to all; and there can be no decree against any other defendant, even if he should have admitted the plaintiff’s case, orthe bill should have been taken pro confesso as against him. This position I take to be sufficiently clear and satisfactory upon the bare statement of it. But where the decree does not charge two or more defendants and is entire in its nature, it is not the course of the court to open or modify it further than is indispensably necessary to correct the error complained of.(d)
Applying these principles to this case, it is clear, that this decree need not, and therefore will not be opened in any manner for the *508 benefit of the defendant Harwood; because he does not ask it; and because his liability, as set forth and admitted by himself in his answer, may well be separated from any charge against the other defendant Mullilcin; therefore the judgment of the court, so far as it kas bound his interests in favour of those creditors whose claims he has not paid, must be allowed to stand and have its full force; and will only be so modified as to let in other existing incumbrances upon the property conveyed in addition to that of the mortgage. Hence -it is perfectly manifest, that Harwood is a witness whose interest cannot be at all affected'if the decree remains altogether as it now stands ; and if it should be opened for the benefit of the trustee, and cestui que trusts under the deed of the 7th April 1810, and no further than to let in their incumbrance in addition to that of the mortgage; then, as Harwood, has been introduced to have it opened for that purpose, he is a witness testifying against his own interest.; so that, in either view of the subject, he is a competent witness upon the present occasion.
The competency of the witness Nicholas Brewer has also been objected to on the ground of his having an interest which must be affected by the decision now called for. The principles which have been just applied to the case of the witness Harwood have in some respects a bearing upon the situation of this witness. He is the solicitor of the plaintiff, and the trustee appointed by the decree to make the sale. The judgment of the court, so far as regards his client and the defendant Harwood, must be allowed to stand ; and therefore he has earned some compensation as the solicitor of the plaintiff. He has not even yet, however, quálified himself, by giving bond, to act as trustee under the decree; but, in consideration of his forbearing to execute his trust, and of an extension of credit agreed to between the plaintiff and the defendant Harwood, he, Harwood, paid to Brewer $200, as it is said, in part of his commissions ; and it is Brewer's liability to refund this sum, in case the decree should not be executed as it stands, that makes him, as is alleged, a witness interested to maintain the decree in favour of the plaintiff by whom he is produced. Forbearance to sue is a consideration sufficient in law to give validity to a promise, (e) And according .to the rules and practice, of the court, a trustee is only allowed full commission, upon the amount of an actual sale; and if the parties prevent him from making *509 sale, after he has qualified himself to act, he is allowed no more than half commissions.(f) Now, in whatever way this payment, made voluntarily by Harwood to Brewer, may be contemplated; whether as a solicitor’s fee; or on account of forbearing to sell; or for commissions which the parties themselves, for their own advantage, prevented him from earning,T do not see how any decision, which I may now pronounce, can lay a foundation' for making Brewer refund this money ; or give to any one a better ground for demanding it of him than now exists. I am therefore of opinion, that he is a competent-witness.
The witness John Johnson, it is objected, is not competent; because he acquired a knowledge of the facts about which he is called on to speak as an attorney. I take it to be well established, that an attorney or solicitor is at no time, either before or after the termination of the suit in which he was retained, authorized, without the consent of his client, to disclose any thing his client has communicated to him. This, however, is a privilege of the client, not of the attorney. And if the client be no party to the matter then in controversy so as to be able to communicate an express or tacit relinquishment of his privilege, the lips of his attorney must remain closed; and the court cannot allow him to speak of that which the policy of the law has prohibited him from disclosing, (g) This is a controversy, according to the order of the 27th of August last, between this petitioner and the plaintiff; therefore, if this witness had obtained his information as the attorney of the defendant Harwood, he could not now be heard; because Harwood, is not here, as regards the present controversy, to waive his privilege, even if he w’ere willing to do so. But the witness positively avers, that he could not and did not act as the attorney of Harwood ; and that a .knowledge of none of the facts, of which he speaks, was obtained as the attorney of him, or of any one else. Consequently he also must be considered as a competent witness.
Having thus disposed of the several preliminary questions, we may now sum up the facts and consider this application upon its merits. There is some contrariety in the particulars as they are related by the petition, and the depositions of the witnesses ; but, after considering those discordances, and laying aside every thing *510 not materially bearing upon the question to be decided, the case appears to be this :
The defendant Thomas Harwood had conveyed his property to secure the payment of his debts to the extent, and in the manner set forth by his two deeds of the 7th of April and 11th September 1810. After which the plaintiff Hodges filed his bill as mortgagee to obtain the benefit of the deed of the 11th of September ; setting forth the deed of the 7th of April, and making this petitioner Mullikin, the surviving trustee under that deed, a defendant along with Thomas Harwood. Which bill Harwood answered, acknowledging, that he had executed those deeds,- and that he had not then paid the debts secured by either of them. On Mullikin’s being served with a subpoena to answer, he at once apprehended, that it had relation to his situation as trustee under the deed of the 7th of April; and, therefore, he called on T. Harwood for information respecting the situation of the debts specified in that deed; and was told, that they were very stale; that more than twelve years had elapsed since they became due; and that he, Mullikin, could have no claim under the trust deed. But Harwood did not inform . Mullikin, that suits had been brought, and judgments obtained against himself, and the late Benjamin Harwood before his death, by some of those creditors. Mullikin appears to have had the credulity to be thus turned aside by T. Harwood from making any further inquiry; and to have been induced to believe, that he might consider himself as completely exonerated, and as having no claim whatever upon the property mentioned in that deed. After which Mullikin, accompanied by T. Harwood, called on Nicholas Brewer, the plaintiff’s solicitor, for the express purpose of obtaining information respecting the suit, so that he might put in his answer; and, from the conversation which then passed, it appears, that the impression was again renewed upon the mind of Mullikin, that, as he had not been, so he could not be injured; and therefore had no claim whatever upon the property .mentioned in the deed of trust. And accordingly he answered to that effect, without then having before him, or ever having read either the bill, or the answer of T. Harwood, as is evident -from his, Mullikin’s, making a mistake in his answer, as to the names of the parties to the bill. After thus answering, it appears, that Mullikin rested satisfied, and had no further information respecting the matter until a short time before the filing of his petition in the month of August last. On the second of May 1825 a decree was passed, grounded *511 upon the admission of Mullikin, and the absence of any proof of the then existence of the debts mentioned in the trust deed, directing the mortgage debt to be paid, and if not, that the property should be sold for the satisfaction of that debt alone.
The law of the court in relation to bills of review was laid down in a set of ordinances or rules established by Lord Bacon as-far back as the beginning of the year 1618. The sound sense and utility of those rules have been amply tested, and they have been adhered to ever since. In regard to the matter now under consideration, the rule is expressed in these words: “ Upon new proof, that is come to light after the decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be grounded by the special license of the court and not otherwise.”(g)
According to the English practice, no new testimony can be introduced into the case after the publication of that which has been taken has passed; and therefore, if the discovery of new proof is madé after publication, but before a decree, the case falls within the meaning of the rule; because although it came to light before the decree, yet it could not possibly have been used at the time the decree passed. But in Maryland the mode of taking testimony is different: here the testimony not being taken in secret, or during any period held closed up; the English order of publication, with its incidents and consequences, have been virtually abolished. (h) Here a party may at any time, even after the case has been set down for hearing, if the application be made on reasonable grounds supported by an affidavit, obtain a commission to take the testimony wanted, (i) And therefore, if the new proof comes to light at any time so long before the decree as to enable the party to apply for a commission, and he neglects to make such an application, he will not be allowed to have the benefit of the rule; because, by the exercise of due diligence, he might have had his testimony brought in so as to be used at the time of passing the decree.
It is expressly laid down, that forgetfulness or negligence of parties, under no incapacity, or of their solicitors, is no foundation for a bill of review ;(j) and therefore, an executor, whose duty it is to *512 look diligently after the assets of his testator, and always to know the amount within his reach, cannot plead want of assets after the debt decreed.(m) So leave to file a bill of review was refused to be granted upon newly discovered evidence, of which the party was sufficiently apprised, by the suggestions in a letter and the proceedings in the case, to have enabled him, with reasonable diligence, to have put it upon the record originally. Because it was considered as most incumbent on the court to take care, that the same subject should not be put in a course of repeated litigation; and, that with a view to the termination of the suit, the necessity of using reasonably active diligence in the first instance should be imposed upon the parties, (n) It is not sufficient to show, that injustice has been done; but that it has been done, under circumstances which authorize the court to interfere; because if a matter has already been investigated, according to the common and ordinary judicial rules, a court of equity cannot take upon itself to enter into it again.(o) But, to show, that the party might, by the exercise of reasonably active diligence, have known, that which he alleges he has recently discovered, it is not enough, that the newly discovered proof was actually in his power at the time the decree was passed; it must also appear, that he knew of something, or that there was something in the case which might be considered as a suggestion, sufficient to apprise him, that there were such other facts and proofs pertinent to the case; and which it was his duty to have searched for; and, if practicable, to have brought in and put upon the record, (p)
It may be admitted, that the credulity of the defendant Mullikin has been played upon to a considerable extent, and that he has even been misled by those from whom he sought information; but, that by no means furnishes a complete justification of his gross negligence. He himself admits, that his co-defendant Harwood had told him, that the debts mentioned in the deed of trust were not paid ; that information it was his duty, as a trustee, to have followed out until he had ascertained the real truth, before he ventured rashly to compromit the interests of the cesfui que trusts. He ought, from that suggestion, to have obtained a full knowledge of every material particular respecting those debts; the entire disclo *513 Sure of the facts in relation to which, being called for by the bill, ought to have been set forth by him in his answer. Before he filed his answer, it was his duty to have read and maturely considered the bill; and a very ordinary degree of care also required of him an examination of the proceedings, in which he would have found the answer of Harwood, in which the fact of the specified debts being then outstanding was stated and relied on as a defence, at least in preference to the claim of the plaintiff. Instead of which, this defendant Mullikin, with a reckless negligence, which no court of justice ought to tolerate, applied to the debtor, for whom he was surety, and to the solicitor of the plaintiff, for information; and, resting on what he thus learned, he filed an answer, carelessly drawn by the solicitor of the plaintiff, without ever having made the least inquiry in any other direction; although he had been thus amply apprised of the necessity of doing so. If the interests of. this defendant alone were jeoparded ; and, if no other person than himself were likely to suffer by letting this decree stand, I certainly could not open or modify it in any one single particular. He, who has been so egregiously negligent of his own rights, can'have no claim to a rehearing,.and a repetition of that litigation which he has so carelessly suffered to be terminated to his disadvantage.(q)
But, from the matters now disclosed, and for this purpose established, it appears, that there are other views of this case, and other consequences likely to arise from this decree as it now stands, than those which relate exclusively to the defendant Mullikin, and the injury which he alone may probably sustain. The creditors, or cestui que trusts under the deed of the 7th of April 1810, are not parties to this decree; and, therefore, their rights cannot be bound by it; but nevertheless, if it is executed as it now stands, their interests may be greatly embarrassed, materially injured, or perhaps in some measure wholly sacrificed. If the real estate is sold under it, the parties with whom they may have to deal will be varied and multiplied; their case may be made more complex and difficult; and a sale of the personal property will be attended with at least the same consequences; and, in addition, it may be thereby removed entirely beyond their reach. Besides, this decree upon the proceedings as they now stand, would most grievously mislead a purchaser under it. He would be warranted in concluding, that the property had been discharged from the incumbrance of the deed of trust; because the *514 court itself had acted upon that belief, which it was authorized to edduce from the answer of Mullilán and the absence of any proof to the contrary; when in fact it had not been so released and could not be protected against that incumbrance, because those creditors had not been made parties.(r)
According to these views of the case, and looking to these consequences, it is perfectly evident, that this decree, if suffered to stand and be executed, may work material injury to those who ought to have been made parties to it, and who have never been called upon or heard in any way : and as to purchasers, it may operate as an instrument of deception' and fraud. I feel it to be my duty, as far as practicable, to prevent any proceeding of this, court from being thus used: and not to suffer the parties by any contrivance; or by the holding back of any circumstance,, either wilfully or negligently, to make any of the solemn acts of the court operate perniciously and unjustly upon the rights and interests of innocent persons.(s) For these reasons therefore I shall afford the parties an opportunity of rectifying this decree; and for that purpose stay its execution until' further order.
A mere bill of review would not be commensurate to the petitioner’s objects ; he must therefore be allowed to file such a bill as-will introduce, as parties, all the creditors named in the deed of the 7th April 1810, in such a manner as to bring their interests, inconnexion with those of the present parties, fully before the court.
Whereupon it is ordered, that all further proceedings under the-decree of the second day of May 1825, he and the same are hereby stayed and suspended until the further order of this court. And it is further ordered, that the petitioner Benjamin Mullilán have leave to file a bill, in the nature of a bill of review, as prayed; whereby he shall make all the parties to the said decree parties to the said bill, together with the creditors, or their legal representatives, who are named in the said deed of the 7th of April 1810, in such a manner as to bring the interests of all the said parties, in the property mentioned in the said deed, fully before the court. And it is further ordered, that the said Benjamin Mullilán pay unto the said plaintiff all the costs which have accrued upon his, the said Mullikin’s, said petition, including this order, to be taxed by the register.
*515 The defendant Benjamin Mullikin, on the 18th of November, 1828, filed a bill in the nature of a bill of review on oath, against Thomas Harwood of Ben., Richard Duckett executor of Daniel Clark, and others; in which, after reciting the various newly discovered facts and circumstances, upon which he had founded his claim to have the decree of the 2d of May 1825 reviewed and corrected, he stated, that the creditors for whose benefit the deed of the 7th of April 1810 was made, have a lien on the property conveyed prior to that of those who now claim as assignees of Hodges, See. See. To this bill the defendants put in their answers; and by consent, on the 20th of August 1829,- a. decree was passed, directing the property to be sold, and it was sold accordingly: and the sale having been finally ratified,the auditor reported a distribution of the proceeds; to which exceptions were filed, and the case was submitted on notes by the solicitors of the exceptant.
16th August, 1831. — Bland, Chancellor. — The voucher of the State’s claim is evidently imperfect. The lien of the State commences with the institution of the suit, not merely with the date of the judgment ;(t) and therefore if the State has obtained these judgments, of the 13th of April 1812, on suits instituted before the 7th of April 1810, the State must have a preference over the creditors under the deed of that date. And, if both of the State’s judgments were in suits instituted since that time, then it ought to be shewn for which the late Benjamin Harwood was liable, on his bond, as surety for the defendant Thomas Harwood of Ben.; because it is only for that amount the State can claim under the deed of the 7th of April 1810. Therefore it is ordered, that this case stand over with leave to explain and perfect the voucher of the State’s claim; and that a copy of this order be sent by mail to the attorney general.
The voucher of the State’s claim was corrected, by which it was shewn, that the State was entitled to a prior lien, which was allowed accordingly.

 1 Harr. Pra. Chan. 179.

 Mitf. Plea. 89.

 Clapham v. Thompson, ante, 124, note.

 Lingan v. Henderson, ante, 235; Ranelagh v. Thornhill, 2 Chan. Ca. 153.

 Selw.N.P.56.

 Gibson’s Case, ante, 138.

 Pow. Mort. 538, note N.; Bac. Abr. tit. Evidence, A. 3; Clay v. Williams, 2 Mun. 122.

 Beam. Ord. Chan. 2.

 1785, ch. 72, s. 14.

 Howard v. Howard, MS. February 1806; Anderson v. McCabe, MS. 1807.

 1 Harr. Pra. Chan. 175; Franklin v. Wilkinson, 3 Mun. 112; Jones v. Pilcher, 6 Mun. 425.

 Suffolk v. Harding, 3 Rep. Chan. 88.

 Young v. Keighly, 16 Ves. 348.

 Bateman v. Willoc, 1 Scho. &. Lefr. 204; Wenston v. Johnson, 2 Mun. 305.

 4 Vin. Ahr. 412.

 Finley v. Bank U. S.; 11 Wheat. 304.

 Finley v. Bank United States, 11 Wheat. 304; Clifton v. Haig, 4 Desau. 330.

 Gifford v. Hort, 1 Scho. & Lefr. 398, 399.

 Jones v. Jones, ante, 443.